396 A.2d 780

**Anthony E. D'AMBROSIO, Jr., Appellant,**

**v.**

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Submitted June 14, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Granted March 28, 1979.

Joel S. Robbins, Philadelphia, for appellant.

Timothy B. Barnard, Media, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided, the order is affirmed.

An opinion per curiam in support of affirmance is filed in which PRICE, VAN der VOORT and HESTER, JJ., join.

PER CURIAM opinion in support of affirmance:

This is an appeal from an order of the Court of Common Pleas, Civil Division, of Delaware County which sustained appellee's preliminary objection in the nature of a demurrer to Count Two of appellant's complaint.

Appellant, Anthony E. D'Ambrosio, Jr., was an insured of appellee's whereby a boat owned by the appellant was covered by the appellee-company. The boat allegedly was damaged in a storm and a claim was filed under the policy. After investigation by an adjuster, the claim was denied. The reason for denial does not appear in the record.

The appellant filed his action on the policy in assumpsit in Count One of the complaint, and in Trespass in Count Two, alleging the denial of the claim to be outrageous, malicious and oppressive, and as a result of this behavior, that appellant suffered severe mental distress, anxiety, embarrassment and humiliation. He further alleged that appellee's breach of the contract amounted to a willful, wanton and malicious tort, claiming punitive damages.

Appellant relies on Section 46 of the Restatement of Torts which states:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Pennsylvania courts have recognized mental distress or emotional distress without physical injury or impact, but in very narrow and clear factual situations and never in a simple breach of contract situation. See *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970); *Bowman v. Sears Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976).

To overrule the demurrer in this case would be to place insurance companies into a situation wherein they would be risking a tort action every time they denied insurance coverage no matter how frivolous the claim. Such a situation would ultimately result in ever-increasing insurance premi-

334

ums to the benefit of no one. We cannot see how a refusal by an insurance company to pay an \$832.23 claim can justifiably give rise to a cause of action for intentional infliction of mental distress or any other cause of action for mental distress. Because we find no authority for the tort action under Pennsylvania law we hold that the court below was correct in its dismissal of that cause of action.

Order affirmed.

HOFFMAN, J. did not participate in the consideration or the decision in this case.

PRICE, VAN der VOORT, and HESTER, JJ., join in a Per Curiam opinion in support of affirmance.

SPAETH, J., files an opinion in support of reversal in which CERCONE, J., joins.

JACOBS, President Judge, joins in Part I of the opinion in support of reversal and would reverse.

SPAETH, Judge, in support of reversal:

This action arose because the defendant-insurer refused to pay a claim filed by the plaintiff-insured for damages to the plaintiff's boat. The complaint is in two counts, one in assumpsit, the other in trespass. The count in assumpsit alleges that the damages to the boat were covered by an insurance policy issued to the plaintiff by the defendant and demands damages in the amount of \$832.23 as the cost of repairing the boat. The count in trespass alleges that the defendant denied the plaintiff's claim, refused to tell the plaintiff why, refused to pay the claim even after the plaintiff had conducted his own investigation and had informed the defendant that it was in error, and insinuated that the plaintiff was submitting a fraudulent claim. This count further alleges that the defendant's actions were outrageous, malicious, and constituted oppressive behaviour, and that as a result of them the plaintiff suffered severe emotional distress and undue worry about his credit standing and professional reputation as a police officer, and has

been subjected to repeated demands for payment from the party who repaired the boat. The court below sustained a demurrer to the count in trespass. I should reverse.

It is established that a demurrer should be sustained only where it appears with certainty that upon the facts averred the law will not permit the plaintiff to recover. *Papieves v. Kelly,* 437 Pa. 373, 381, 263 A.2d 118, 122 (1970). All well-pleaded facts, and all inferences that may fairly be deduced from those facts, must be taken as true. *City of Philadelphia v. Penn Plastering Corp.,* 434 Pa. 122, 253 A.2d 247 (1969). Any doubt must be resolved in favor of refusing to sustain the demurrer. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Here, while not a model pleading, the count in trespass alleges that the insurer breached the contract, refused to tell the plaintiff why it did, and refused to consider the plaintiff's own independent investigation. Taken as true, these allegations sufficiently state not merely one but two causes of action in trespass: an action for intentional infliction of emotional distress; and an action for a breach by the defendant of its duty as the plaintiff's insurer.

## I.

Pennsylvania law recognizes a cause of action in trespass for intentional infliction of emotional distress. *See Beasley v. Freedman,* 256 Pa.Super. 208, 389 A.2d 1087 (1978); *Fair v. Negley,* 257 Pa.Super. 50, 390 A.2d 240 (1978); *see also* Restatement of Torts (Second) § 46. The opinion in support of affirmance says that such an action will "never" lie "in a simple breach of contract situation." I do not know what the opinion in support of affirmance means by a simple breach of contract situation,[1] but I do know that this court

---

1. Perhaps the opinion in support of affirmance means that something more than a mere breach must be alleged in order to state an action for emotional distress. If this is a fair reading of the opinion in support of affirmance, I agree with the principle but disagree with its application to the present case. The count in trespass in this case alleges much more than a mere breach; as stated above it alleges that the defendant insurer refused to explain its breach, refused to

has allowed a trespass action for emotional distress where the basis of the action was a breach of contract. Thus in *Beasley v. Freedman, supra,* and in *Fair v. Negley, supra,* this court held that where there is a breach of an implied warranty of habitability in a lease an action for emotional distress may lie. For purposes of deciding whether a trespass action for emotional distress may result from outrageous actions in conjunction with a breach of contract, I see no difference between a contract of lease and a contract of insurance.

My conclusion that there is no difference is supported by cases in other jurisdictions permitting recovery in tort for intentional infliction of emotional distress where an insurer has acted outrageously in refusing to pay a claim by the insured. *See Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1 (7th Cir. 1972) (interpreting Illinois law); *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal. Rptr. 78 (1970); *Amsden v. Grinnel Mutual Reinsurance Co.,* Iowa, 203 N.W.2d 252 (1972).

## II.

I agree that it is not entirely clear that Pennsylvania law recognizes a cause of action in trespass for a breach by the defendant of its duty as the plaintiff's insurer. An examination of the cases will show, however, that such a cause of action will lie.

## –A–

The tort of breach of insurer's duty is of recent origin, and as is so of many developments in the law of tort, the jurisdiction in which it originated was California. *See generally Greenman v. Yuba Power Products,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963) (strict liability for defective products); *State Rubbish Collectors Assn. v. Siliznoff,* 38 Cal.2d 330, 240 P.2d 282 (1952) (intentional infliction of emotional distress).

act on information gathered by the plaintiff showing that its refusal was in error, and insinuated fraud.

In *Fletcher v. Western National Life Ins. Co., supra,* the insured sought compensatory and punitive damages from his insurer and the claim supervisor. The theory of the action was that the insurer's actions in handling the claim caused the insured severe emotional distress. The insured was a 41 year old married man with eight children who was forced to leave work because of several injuries. The insurer refused to make disability payments to the insured despite clear evidence that the insured was in fact disabled. The insurer also sent a letter to the insured accusing him of fraud and stating that the policy would be discontinued. At the time of this letter the insurer apparently knew that the insured was in financial straits and thought that it could coerce a settlement of the claim. The jury awarded damages for emotional distress, and the California Court of Appeals affirmed, holding that when the insurer's actions were in bad faith and malicious, the insured could recover damages in tort for emotional distress. The court did not stop there, however, but continued:

> We further hold that, independent of the tort of intentional infliction of emotional distress, such conduct on the part of a disability insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered . . . .

10 Cal.App.3d at 401, 89 Cal.Rptr. at 94.

Three years later, in *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), the California courts were again confronted with a complaint alleging that the insurer's actions in refusing a claim by the insured caused severe emotional distress. In *Gruenberg* the insured alleged that three insurers wilfully and maliciously entered into a scheme to deprive him of the benefits of the fire insurance policies he held on his restaurant. Besides encouraging the institution of criminal charges against the insured, by suggesting that the insurance was excessive, the insurers demanded that the insured submit to an examination under oath and produce certain documents while the criminal charges were still pending. This demand was pursuant to a

clause in the policy providing for cooperation by the insured. On advice of counsel the insured refused to submit to the examination or to produce the documents. The insurers thereupon denied liability, claiming that the insured's refusal to cooperate voided coverage under the policies. The insured brought suit claiming that the conduct of the insurers caused him emotional distress, for which he sought compensatory and punitive damages. The lower court sustained a demurrer to the complaint. The Supreme Court of California reversed, holding that the complaint stated a cause of action in tort against the insurers for breach of their implied duty of good faith and fair dealing. In so holding the Supreme Court stated that the breach of the insurers' duty was a tort independent of the tort of intentional infliction of emotional distress, and that while the insured's failure to allege outrageous conduct could prove fatal to an action for emotional distress, an allegation of outrageousness was not required in an action in tort for breach of an insurer's duty of good faith. Thus in *Gruenberg* the suggestion in *Fletcher* that there existed an independent tort of breach of insurer's duty was realized.

The California Supreme Court has since reaffirmed the principle established in *Gruenberg* and has permitted recovery in tort where the insurer breached its duty of good faith by refusing to pay the insured's medical bills. *See Silberg v. California Life Ins. Co.*, 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974).

Other jurisdictions have adopted the *Gruenberg* holding and recognize that where the insurer unreasonably refuses to pay a claim, tort liability may result for breach of the insurer's duty of good faith. *See Escambia Treating Co. v. Aetna Cas. & Sur. Co.*, 421 F.Supp. 1367 (N.D.Fla.1976) (interpreting Florida law); *Ledingham v. Blue Cross Plan for Hospital Care*, 29 Ill.App.3d 339, 330 N.E.2d 540 (1975) (goes beyond *Eckenrode v. Life of America Ins. Co. supra*, and recognizes an action not only for emotional distress but also for breach of insurer's duty); *United States Fidelity & Guaranty Co. v. Peterson*, Nev., 540 P.2d 1070 (1975) (adopts

theory of independent tort); *see also United States Automobile Assn. v. Werley*, Alaska, 526 P.2d 28 (1974) (insurer's bad faith refusal to pay insured was breach of duty of good faith sufficient to constitute fraud under exception to attorney-client privilege exception to discovery rules); *Vernon Fire & Cas. Ins. Co. v. Sharp*, Ind., 349 N.E.2d 173 (1976) (where insurer unreasonably refuses to pay a claim liability for extra-contract damages including punitive damages may result).

–B–

The reasoning in *Gruenberg* is most instructive. The California Supreme Court first looked to past cases in which the insurer had been held liable for failing to accept a reasonable settlement within the policy limits and the insured had had judgment taken against him in excess of the policy. *See Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198 (1958). The rationale supporting the reasonable settlement cases, according to the Supreme Court, was that the insurance contract contained an implied covenant of good faith and fair dealing, which was breached when the reasonable settlement was refused by the insurer. The Court then compared the situation in the reasonable settlement cases with the situation before it in *Gruenberg*, and stated:

Thus in *Comunale* and *Crisci* we made it clear that "[l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing." (*Crisci, supra*, 66 Cal.2d at p. 430, 426 P.2d at p. 177, 58 Cal.Rptr. at p. 17.) In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a "duty to accept reasonable settlements"; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured,

namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

9 Cal.3d at 573, 108 Cal.Rptr. at 485, 510 P.2d at 1037.

Thus in *Gruenberg,* the California Supreme Court saw the creation of tort liability for the breach of good faith as a natural outgrowth of a long standing policy that insurers must deal fairly with their insureds; the duty to accept reasonable settlements and the duty to act reasonably in handling claims were merely aspects of the same general duty of good faith and fair dealing. When the insurer breaches this duty either by refusing a reasonable settlement or by acting unreasonably in denying a claim it is liable for the consequences.[2] *See Escambia Treating Co. v. Aetna Cas. & Sur. Co., supra* (recognized independent tort after similar analysis of Florida law).

**2.** The court in *Fletcher* had made a similar analysis in allowing an action for intentional infliction of emotional distress:

> An insurer owes its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. Included within this duty . . . is the duty to act reasonably and in good faith to settle claims against the insured by a third person. . . . The violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract. . . . We think that, similarly, the implied-in-law duty of good faith and fair dealing imposes upon a disability insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy.

10 Cal.App.3d at 401, 89 Cal.Rptr. at 93.

In my judgment the California Supreme Court's reasoning is most persuasive. It is, moreover, consistent with the reasoning of our Supreme Court, which has stated that "[t]he utmost fair dealing should characterize the transactions between an insurance company and the insured." *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 559, 151 A. 285, 286 (1930). Furthermore, this court has defined the insurer's duty to act fairly as a duty to "do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Diamon v. Penn Mutual Fire Ins. Co.*, 247 Pa.Super. 534, 372 A.2d 1218 (1977); *D. B. Van Campen Corp. v. Building & Construction Trades Council of Philadelphia*, 202 Pa.Super. 118, 122, 195 A.2d 134, 136–37 (1963). Thus where the insurer causes the application of a claim by the insured to be untimely filed, it cannot raise the defense of untimeliness to the claim. *See Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977); *Simons v. Safety Mutual Fire Ins. Co.*, 277 Pa. 200, 120 A. 822 (1923); *Fritz v. British American Assurance Co.*, 208 Pa. 268, 57 A. 573 (1904); *Diamon v. Penn Mutual Fire Ins. Co., supra* (collecting cases); *O'Connor v. Allemannia Fire Ins. Co.*, 128 Pa.Super. 336, 339–40, 194 A. 217, 218–19 (1937). Moreover, the insurer is required to act in the utmost good faith in handling claims by or against its insured, and where it unreasonably refuses a settlement offered by a third party it may be responsible for the entire amount of any judgment against the insured. *See Gray v. Nationwide Mutual Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966); *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963); *Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957). In *Gedeon* the Supreme Court described the obligation of the insurer under an automobile liability policy as follows:

[B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position to-

wards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured.

410 Pa. at 59, 188 A.2d at 322.

Thus both our Supreme Court and this court have required insurers to abide by a very high standard of fairness and good faith in dealing with their insureds. This requirement rests in part on the recognition both that insurance contracts are contracts of adhesion,[3] and that the insured at the time of the claim may be in unfortunate circumstances—his house may have been burned down; he may be disabled and unable to work; he may be hospitalized. In fact it may be stated that the insured signs the insurance contract not for commercial advantage but for the peace of mind that if the anticipated injury should occur, his claim for any physical or property damage covered by the policy will be treated reasonably by the insurer. The insured certainly does not pay premiums in the expectation that if he suffers the anticipated injury, the insurer will act in bad faith and unreasonably reject his claim, so that he may be forced to bring a lawsuit against the insurer.[4] The insurer's promise

---

3. In *Brakeman v. Potomac Ins. Co.*, *supra*, the Supreme Court stated:
   An insurance contract is not a negotiated agreement; rather its conditions are by and large *dictated by the insurance company to the insured. The only aspect of the contract over which the insured can "bargain" is the monetary amount of coverage. . .*
   472 Pa. at 72, 371 A.2d at 196 (emphasis added).
   *See also*, R. Keeton, Insurance Law, § 6.3(a), at 350–51 (1971): Insurance contracts continue to be contracts of adhesion, under which the insured is left little choice beyond electing among standardized, provisions offered to him, even when the standard forms are prescribed by public officials rather than insurers. Moreover . . . most insurance policy provisions are still drafted by insurers . . . . Under such circumstances as these, judicial regulation of contracts of adhesion . . . remains appropriate.

4. The court in *Escambia Treating Co. v. Aetna Cas. & Sur. Co.*, *supra*, stated that *Gruenberg* reflects "the policy or concept that an insured

to the insured to "simplify his life," to put him "in good hands," to back him with "a piece of the rock" or to be "on his side" hardly suggests that the insurer will abandon the insured in his time of need.

Accordingly, I have no difficulty in concluding that we should hold, as the California Supreme Court did in *Gruenberg*, that an insurer may be liable in tort for the mental distress and other damages suffered by the insured as a result of the insurer's bad faith breach of its duty to deal with the insured with the utmost fairness. Since here the plaintiff's count in trespass sufficiently alleges such a breach, the demurrer should not have been sustained.

–C–

The defendant-insurer in the present case admits that insurers have a duty to act in good faith, but it argues that no action in trespass may lie for a breach of that duty. In support of this argument the insurer cites *Gray v. Nationwide Mutual Ins. Co., supra*.

In *Gray* the facts were these. The plaintiff sued the insured for damages arising out of an automobile collision. The insurer represented the insured, and the plaintiff was awarded a judgment of $15,000.00. The insurer paid $5,236.67, which was the limit of the policy. When the plaintiff sought the balance from the insured, the insured gave the plaintiff an assignment of his rights against the insurer. The plaintiff then sued the insurer in assumpsit for the balance of the judgment, alleging that the insurer had in bad faith refused a reasonable settlement before trial, and that since the balance of the judgment would therefore be recoverable by the insured, the plaintiff as assignee of the insured could sue the insurer for the balance.

One issue before the Supreme Court was whether an action for bad faith refusal to settle could be assigned. If the action was in tort it could not be assigned, if in contract,

purchases insurance and not an unjustified court battle when he enters into the insurance contract." 421 F.Supp. at 1369.

it could be.[5]   Recognizing that earlier decisions had not made clear whether an action for bad faith refusal to settle sounded in tort or contract, the Court stated that the action was based on the breach of an implied contractual duty of the insurer to act in good faith.[6]   The basis of the action was thus contractual and therefore the action could be assigned. The Court stated:

> We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action of *assumpsit* will lie.

> 422 Pa. at 508, 223 A.2d at 11 (emphasis added).

This statement is not conclusive of the question whether an action in trespass will lie where the insurer breaches its duty of good faith to the insured.   At no point did the Court state in *Gray* that an action in trespass would not lie; the Court merely held that the plaintiff's action for the balance of the judgment was an action in assumpsit and so was assignable.   In considering the scope of this holding it is important to note that the damages sought were for the balance of the judgment; no claim was made for damages for emotional distress and worry caused the insured by the insurer's bad faith.   I do not read *Gray* as precluding an action in trespass for such damages.   Nor can I imagine any reason why *Gray* should be so read.   To the contrary, allowing an action in trespass for the emotional distress resulting from a breach of the insurer's duty promotes the underlying principle of *Gray*, that an insurer should be

---

**5.** The Court noted that the California courts had treated the reasonable settlement cases as tort actions but further noted that California law permits the assignment of tort actions.   422 Pa. at 508–509 n. 6, 223 A.2d at 11–12 n. 6.

**6.** In *Cowden v. Aetna Cas. & Sur. Co., supra*, the Supreme Court had permitted the insured to pursue his claim of bad faith by the insurer as an action in trespass.   In *Gray* the court cited *Cowden*, but referred to the insurer's "contractual" duty.   422 Pa. at 507–08, 223 A.2d at 11.

responsible for all damages caused by a breach of its duty of good faith.

## III.

One further comment is required. As has been discussed in Parts I and II of this opinion, two distinct causes of action in tort have been recognized where the insurer refuses payment on a claim by the insured: the first, an action for intentional infliction of emotional distress; and the second, an action for breach of the insurer's duty of good faith dealing. In the present case, the first of these causes of action is superfluous.

To recover for the intentional infliction of emotional distress the insured must prove that the insurer's conduct was outrageous; but to recover for breach of the insurer's duty of good faith dealing the insured need only prove that the insurer's action was in bad faith. *See Gruenberg v. Aetna Ins. Co., supra.* If the insured here is able to prove that the conduct of the insurer was, as alleged, outrageous and intentional or reckless, he may recover for the tort of intentional infliction of emotional distress, but in doing so he would have already proved that the insurer breached its duty of good faith dealing. If the insured could not prove that the insurer's conduct reached the level of outrageousness, still he could recover for emotional distress resulting from the insurer's breach of its duty of good faith dealing.

This overlapping of the two causes of action will not always occur. For example, in the landlord-tenant cases an action for intentional infliction of emotional distress may lie, but there will be no possible overlapping action for breach of a duty of good faith dealing. Here, however, the overlapping does occur. Therefore, in overruling the lower court's order sustaining the demurrer, I should state that the plaintiff should be permitted to proceed on the complaint on the theory of a breach of the insurer's duty of good faith dealing.

The order of the lower court should be reversed and the case remanded for proceedings consistent with this opinion.

CERCONE, J., joins in this opinion.

JACOBS, President Judge, joins in Part I of this opinion and would reverse.