## Deetz v. Nationwide Mutual Ins. Co.

*Richard A. Stanko,* for plaintiffs.

*Harvey Freedenberg* and *G. Thomas Miller,* for defendants.

DOWLING, *J.,* March 23, 1981—In an automobile accident, defendant, Nationwide, was the insurer of both vehicles and now finds itself on a collision course with one of its insureds. Plaintiff, Earl Deetz, is suing his carrier in both assumpsit and trespass asserting a series of improper and/or unethical practices in connection with the adjustment of his claims. He alleges in essence, and for purposes of this opinion such averments are ac-

cepted as verity, that representatives of Nationwide tricked him into signing a release for $25,000 and that on several occasions improperly terminated payment of work loss benefits. As a result, plaintiff claims he and his wife suffered extreme mental and emotional distress.

These charges have not unexpectedly drawn preliminary objections seeking to dismiss, strike and clarify the allegations. The complaint, somewhat verbose as it is, can be divided into four basic causes of action. Plaintiffs allege a breach of duty of good faith and fair dealing, intentional infliction of emotional distress, a violation of the Unfair Insurance Practices Act[1] with attended regulations[2] and a violation of the Unfair Trade Practices and Consumer Protection Law[3].

The pivotal issues are defendant's demurrers to all of these counts. It first attacks what are really two causes of action: infliction of emotional distress and breach by defendant of its duty as plaintiffs' insurer.

In D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co., 262 Pa. Superior Ct. 331, 396 A. 2d 780 (1978) [affirmed, 494 Pa. 501, 431 A. 2d 966 (1981)], an equally divided Superior Court affirmed a Delaware County decision sustaining a demurrer to such causes of action. The insurance carrier had denied a claim for damage to a boat and its insured sued not only in assumpsit on the policy but also in trespass alleging the denial of the claim to be "outrageous, malicious and oppressive" as a result of which the insured suffered "severe mental distress,

---

1. Act of July 22, 1974, P.L. 589, 40 P.S. §1171.1 et seq.

2. Codified in 31 Pa. Code §146.1 et seq.

3. Act of November 24, 1976, P.L. 1166, as amended, 73 P.S. §201-1 et seq.

anxiety, embarrassment and humiliation" and that the carrier's breach of the insurance contract amounted to a "willful, wanton and malicious tort." The per curiam opinion in support of the affirmance stated at p. 333:

"Appellant relies on Section 46 of the Restatement of Torts which states: '(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'

"Pennsylvania courts have recognized mental distress or emotional distress without physical injury or impact, but in very narrow and clear factual situations and never in a simple breach of contract situation. See Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970); Bowman v. Sears Roebuck & Co., 245 Pa. Superior Ct. 530, 369 A. 2d 754 (1976).

"'To overrule the demurrer in this case would be to place insurance companies into a situation wherein they would be risking a tort action every time they denied insurance coverage no matter how frivolous the claim. Such a situation would ultimately result in ever-increasing insurance premiums to the benefit of no one. We cannot see how a refusal by an insurance company to pay a $832.23 claim can justifiably give rise to a cause of action for intentional infliction of mental distress or any other cause of action for mental distress. Because we find no authority for the tort action under Pennsylvania law we hold that the court below was correct in its dismissal of that cause of action."

There was a very scholarly and persuasive opinion by Judge Spaeth in support of reversal in which it was noted that Pennsylvania had recognized the

cause of action in trespass for intentional infliction of emotional distress in cases involving a breach of an implied warranty of habitability in a lease and that there should be no difference between a contract of lease and a contract of insurance. While Judge Spaeth agreed that it was not entirely clear that Pennsylvania law recognized a cause of action in trespass for a breach by defendant of his duty as the plaintiff's insurer, he felt that an examination of authorities from other jurisdictions showed that such an action was improper.

Subsequent decisions re-enforced the rather shaky underpinnings of the sketchy per curiam opinion in D'Ambrosio. In Smith v. Harleysville Insurance Co., 275 Pa. Superior Ct. 246, 418 A. 2d 705 (1980), a panel, comprised of Judges Price, Van der Voort and Wieand, affirmed a lower court decision striking a claim for punitive damages based upon the alleged failure to pay no-fault benefits. The court offered the following reasoning in support of its conclusion at p. 248:

"Appellant argues, however, that the insurer's failure to make payment constituted a malicious tort for which punitive damages may be assessed. We reject this contention. It would be improvident to permit a rule of law by which a breach of contract may readily be converted into an action for a malicious tort. To do so would be to place insurance companies into a situation wherein they would be risking a tort action every time they denied insurance coverage no matter how frivolous the claim. D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company. . . . [supra]." Accord: Gurnick v. Government Employees Insurance Co., 278 Pa. Superior Ct. 437, 420 A. 2d 620 (1980).

This court, too, has recently applied D'Ambrosio to a claim seeking recovery of damages for mental

anguish arising from a refusal to pay disability benefits: Bierly v. John Hancock Mutual Life Insurance Co., 13 D. & C. 3d 40, 101 Dauph. 321 (1979) (per Wickersham, J.).

Recent Federal decisions have held that D'Ambrosio is an accurate statement of the law of Pennsylvania. In Mazzula v. Monarch Life Insurance Co., 487 F. Supp. 1299 (E.D. Pa. 1980), the court dismissed the count of plaintiff's complaint seeking punitive damages for an alleged wrongful termination of monthly disability insurance benefits. In so ruling, Judge Broderick noted at p. 1302:

"Although we are impressed by Judge Spaeth's dissent in D'Ambrosio, we feel compelled to predict that the Supreme Court of Pennsylvania will probably follow the per curiam opinion in D'Ambrosio, and hold that an allegation of intentional infliction of emotional distress caused by an insurer who has acted outrageously in refusing to pay a claim made by an insured party fails to state a claim upon which relief can be granted under Pennsylvania law."

Similarly, in Batka v. Liberty Mutual Insurance Co., 486 F. Supp. 582 (E.D. Pa. 1980), the court granted summary judgment on plaintiff's claim for punitive damages arising out of an alleged wrongful refusal on the part of his insurer to pay a fire loss claim. See, also Cohen v. Equitable Life Assurance Society of the United States, No. 78-4063 (E.D. Pa. Feb. 1, 1980) (refusing to permit plaintiff to amend complaint to plead claim for punitive damages based upon insurer's termination of disability benefit payments).

Plaintiffs rely upon a number of decisions from other jurisdictions which recognize the availability of a trespass cause of action for situations alleged

in the instant case. The holding of these cases conflicts however with that in the D'Ambrosio and cannot be considered binding upon this court. Nor can we accept plaintiffs' attempt to distinguish D'Ambrosio on the basis that the conduct alleged there was less offensive than that averred in the present case. While the principle of law enunciated grew out of a relatively minor claim, the court did not specifically limit its application to the facts of the case before it. The principle of stare decisis would be totally emaciated if the law of the case were limited to the particular facts presented therein. Perhaps the time has come for a more definitive exposition from our appellate courts on this very important issue, but as we see it we are bound to support D'Ambrosio which is fatal to the plaintiffs' trespass counts.

The alleged statutory violations are laid in assumpsit (count 6 of the complaint) setting forth that defendant's conduct constituted unfair or deceptive practices prohibited by the Unfair Insurance Practice Act and the Unfair Trade Practices and Consumer Protection Law. Defendant's demurrer to the former asserts that neither the statute nor any regulations upon which plaintiffs' claim is based create a private right of action and the sole power for enforcement rests with the Insurance Commissioner. Plaintiffs concede as much but maintain that the Unfair Insurance Practice Act sets standards against which defendant's conduct can be measured under the Unfair Trade Practice Act and the Consumer Protection Act. Defendant's demurrer attack on this statute is that it was not designed to protect against the type of conduct alleged by plaintiff.

It is here that we must part company with Nationwide. In contrast to the Unfair Insurance

Practices Act, section 9.2 of the Consumer Protection Law, 73 P.S. §201-9.2, does provide a private cause of action for violation of its provisions:

"(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper."

The Trade Practices Act specifically prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce: 73 P.S. §201-3. These unfair or deceptive acts or practices are defined in 73 P.S. §201-2, and include section 201-2(4)(xvii)): "Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." The Trade Practices Act is designed to prevent fraud, and therefore is to be construed liberally to affect its object of preventing unfair or deceptive practices: Com. v. Monumental Properties, Inc., 459 Pa. 450, 329 A. 2d 812 (1974). In interpreting specifically section 201-2(4)(xvii) of the act, the Pennsylvania Supreme Court stated at pages 478, 479:

"[The Commonwealth] argues that this section [201-2(4)(xiii)] was designed to cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce. . . .

"The Legislature realized, as has often been stated, that no sooner is one fraud specifically defined and outlawed that another variant of it appears. Rather than restricting courts and the enforcing authorities solely to narrow specific type of unfair and deceptive practices, the legislature wisely declared unlawful 'any other fraudulent conduct.' This is a common and well-accepted legislative response to the mischief caused by unfair and deceptive market practices."

In order to determine what acts constitute unfair trade practices in the insurance business, one may refer back to the Insurance Act. The Pennsylvania legislature intended to prevent fraud in the insurance industry "by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined." 40 P.S. § 1171.2.

There are two specific practices prohibited by the Insurance Act which plaintiffs charge defendant with in the instant case. They are ["m]isrepresenting pertinent facts or policy or contract provisions relating to coverages at issue." 40 P.S. § 1171.5(a)(10)(i); and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear." 40 P.S. § 1171.5(a)(10)(vi). In the complaint it is alleged that defendant threatened to cut off plaintiffs' work loss benefits in February of 1979 and that in July of 1979 they terminated plaintiffs' work loss benefits for some five weeks. A reading of all of the allegations in the complaint would support charges under the above section of the Unfair Insurance Practices Act.

It is not significant that plaintiffs attempt to interface the provisions of one statute within the provisions of the Trade Practices Act. Pennsylvania courts have repeatedly held that the violations of other statutes can also be violations of the Trade Practice Act. In Bolden v. Potamkin-Auerbach Chevrolet, Inc., 470 F. Supp. 618 (E.D. Pa. 1979), a breach of the Truth in Lending Act and a breach of Pennsylvania Motor Vehicle Sales Finance Act of June 28, 1947, P.L. 110, as amended, 69 P.S. §601 et seq., were held to be unfair trade practices under the Trade Practice Act. In Com. v. Armstrong, 74 D. & C. 2d 579 (1974), a breach of the Fictitious Names Act was held to be unfair trade practice under the Trade Practice Act. In Safeguard Investment Corp. v. Com., 44 Pa. Commonwealth Ct. 417, 404 A. 2d 720 (1979), It was held that the Trade Practices Act applied even though other statutes enacted at an earlier date also prescribed the activities.

Defendant argues that one would be required to strain the language of the Trade Practices Act to apply it to the insurance business. However, applying this act to insurance companies is no greater a strain than applying it to landlords and tenants, Com. v. Monumental Properties, Inc., supra; banks and lending institutions, Iron and Glass Bank v. Franz, 9 D. & C. 3d 419 (1978); or people who attempt to procure black lung benefits for others: Com. v. Ziomek, _____ Pa. Commonwealth Ct. _____, 352 A. 2d 235 (1976).

The Trade Practices Act is to be liberally construed to prevent fraud wherever business is transacted. No one could argue that obtaining insurance is not a business or that insurance coverage is not a service or a product which can be subjected to consumer fraud. Insurance coverage is advertised the same way other services or products are adver-

tised. It is sold the same way other services or products are sold. People shop around between various insurance companies in the same manner as they shop for other goods or services. Furthermore, insurance contracts are recognized as adhesion contracts in the same manner as are leases.

If it were the intent of the legislature to exclude the insurance industry from the Trade Practices Act,the legislature would have excluded insurance companies from their definition of "person" under the act. It did not. Rather, in section 201-2(2) a "'[p]erson' means natural persons, corporations, trusts, partnerships, incorporated and incorporated associations, and any other legal entities."

Since we hold that a cause of action exists under the Consumer Protection Law defendant's motion to strike the claim for treble damages which is recoverable under the statute, see section 201-9.2, supra, is denied.

As to the final preliminary objections regarding lack of specificity in paragraph 35 of the complaint wherein it is charged that "from September through November 1979 defendant's agents continued to contact plaintiff Earl Deetz harassing him and being abusive toward him" we commend defendants to utilization of the rules of discovery.

Accordingly, we enter the following

## ORDER

And now, March 23, 1981, defendant's preliminary objections are sustained in part and dismissed in part as discussed above.