## Raab v. Keystone Insurance Company

*Anthony B. Baratto*, for plaintiffs.
*Hugh J. Hutchison*, for defendants.

GOODHEART, *J.*, October 22, 1982—

### I. PRELIMINARY STATEMENT

#### A. Introduction

This case presents the question whether damages may be obtained for emotional distress and personal injuries due to an insurer's denial of basic

loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § § 1009.101 et seq. Plaintiffs are James T. Raab and his wife, Constance Raab, of Bucks County, Pa. Defendants are Keystone Insurance Company and Ed O'Keefe, a claims supervisor for defendant, Keystone. This case came before this court on defendants' motion for summary judgment. On May 14, 1982, an order was entered, granting defendants' motion. On June 10, 1982, plaintiff's motion for reconsideration of this court's order of May 14, 1982, was denied. This memorandum sets forth the reasons for the granting of the summary judgment and the denial of the reconsideration motion.

Rule 1035(b) of the Pennsylvania Rules of Civil Procedure permits a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Pa.R.C.P. § 1035(b) ). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party: Acker v. Palena, 260 Pa. Super. 214, 393 A. 2d 1230 (1978), accord Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A. 2d 466 (1979); Curran v. Philadelphia Newspapers, Inc., 497 Pa. 163, 439 A. 2d 652 (1981). The inferences to be drawn from the underlying facts advanced by the movant must be viewed in the light most favorable to the non-movant: Davis v. Pennzoil Co., 438 Pa. 194, 264 A. 2d 597 (1970); see Thompson Coal Co., supra. Defendants, however, have not accompanied their motion with any affidavits or other materials which may be considered in adjudging a summary judgment motion. Therefore, for purposes of ruling on this motion, we will treat all of plaintiff's well-

pleaded allegations as true. See Carollo v. Forty-Eight Insulation, Inc., 252 Pa. Super. 422, 381 A. 2d 990 (1970); See also Curran v. Philadelphia Newspapers, Inc., supra. After reciting the facts upon which we base our decision, we will outline the procedural history and the issues raised by defendants' motion. We will then explain our conclusion that defendants' motion must be granted.

## B. Factual Background

Plaintiff, James T. Raab, was insured by defendant, Keystone Insurance Company. The contract of insurance provided plaintiff with no-fault benefits and all additional coverage required by the Pennsylvania No-fault Act. On April 17, 1976, plaintiff was involved in a motor vehicle accident while traveling in New Jersey. Plaintiff timely notified defendant, Keystone, of the accident. Following submission of the requested forms, defendant, Keystone, made various payments of medical bills and wage loss, pursuant to plaintiff's basic loss benefits coverage until November, 1976. Defendant, Keystone, acting through the person of its employee, Ed O'Keefe, has refused to pay wage loss benefits to plaintiff since November, 1976.

## C. Procedural History

On February 14, 1977, plaintiff, joined by his wife, Constance Raab, filed a complaint in trespass in the Court of Common Pleas of Philadelphia County, entitled James T. Raab and Constance Raab v. Keystone Insurance Co. and Ed o'Keefe, February term, 1977, No. 1391. Plaintiff alleged that defendant, Keystone, refused to pay wage loss to plaintiff despite knowing that plaintiff had been totally and permanently disabled as a result of the injuries sustained in the accident. Plaintiff con-

tended that defendants so mishandled the internal administration of their file and particularly in failing to timely pay the benefits required by the policy, so as to directly cause and aggravate a pre-existing stress condition caused by the accident of April 17, 1976. Plaintiff further asserted that the anxiety itself directly caused an exacerbation of a previously extant arteriosclerotic heart condition of plaintiff, thus requiring plaintiff to undergo further hospitalization and medical treatment for that "cardiac condition" in November, 1976.

Plaintiff asserted that defendants negligently and/or maliciously interfered with plaintiff's contract of insurance, and that plaintiff has sustained a diminution of his earning capacity, a loss of usual habits, enjoyments, avocations and occupations, suffered severe physical pain and grevious mental anguish.

Preliminary objections in the nature of a demurrer were sustained in that action. The dismissal has been affirmed by the Superior and Supreme Courts of Pennsylvania: Raab v. Keystone Insurance Co., 271 Pa. Super. 185, 412 A. 2d 638 (1979), appeal dismissed, 496 Pa. 414, 437 A. 2d 941 (1981). The Superior Court, on October 19, 1979, adopted the opinion of the court below (Judge Gelfand) and stated:

"Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass. However, there are circumstances out of which a breach of contract may give rise to an actionable tort. The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual ob-

ligation (misfeasance) rather than the mere failure to perform (nonfeasance).

Plaintiffs allege that defendants' negligence is grounded in their "failure" to take certain actions in the handling of Plaintiff's claim. Our examination of this alleged conduct indicates that it is in the nature of "nonfeasance" inasmuch as it is the "omitting to do, or not doing something which ought to be done." Accordingly, we find no cause of action in trespass for negligent breach of contract exists under the allegations made herein: Raab v. Keystone Insurance Co. 271 Pa. Super. 185, 412 A. 2d at 639 (1979). (Citations omitted.)"

Justice Price concurred, but would have affirmed on the basis of D'Ambrosio v. Pennsylvania Mutual Casualty Insurance Company, 262 Pa. Super. 331, 396 A. 2d 780 (1978), aff'd. 494 Pa. 501, 431 A. 2d 966 (1981).

On November 28, 1978, plaintiff instituted this action in trespass and assumpsit against the same two defendants. Plaintiff filed an eight count complaint. By order of August 2, 1979, Judge William A. Dwyer, Jr. sustained defendants' preliminary objections to Count V and VII, in trespass and assumpsit respectively, and overruled defendants' preliminary objections to the remaining counts in plaintiff's complaint, Counts I-IV, VI, VIII.

In plaintiff's complaint, Count I, in trespass, plaintiff seeks both compensatory and punitive damages for alleged negligent, careless, wanton, reckless, extreme and outrageous conduct on the part of defendants for alleged failure to make no-fault benefit payments to plaintiff. Count II, in trespass, alleges negligence per se on the part of defendant for bad faith breach of duties defined in the Unfair Insurance Practices Act. Count III, in trespass, alleges negligence per se on the part of defendants for their alleged failure to provide basic

loss benefits pursuant to the Pennsylvania Motor Vehicle No-fault Insurance Act. Count IV, in trespass, alleges defendants' extreme and outrageous conduct. Count VI, in trespass, seeks damages for plaintiff's wife due to the alleged wrongful conduct of plaintiff. Count VIII is in assumpsit and seeks both compensatory and punitive damages for breach of contract and bad faith performance of contract.

On February 18, 1982, defendant filed this motion for summary judgment.

### D. Parties' Contentions

Defendant claims that the six remaining counts in the complaint essentially allege tortious conduct by defendants for failure to pay benefits allegedly owed plaintiff pursuant to the no-fault insurance contract. Defendant further claims that the law of Pennsylvania regarding causes of action in the nature of tortious breach of contract have been more fully examined and clarified by the Pennsylvania appellate courts. Specifically, defendant addresses each of the plaintiff's counts describing Counts I, IV and VI as resting upon allegations of varying degrees of negligence, alternatively characterized in the complaint as outrageous, extreme, reckless, wanton, wrongful or bad faith breach of contract. Plaintiff's Count II, as defendant describes it, is based entirely on plaintiff's claim that defendant breached duties imposed upon it by the Unfair Insurance Practices Act. Count III alleges virtually the same allegations contained in Counts I, II, IV and VI, but bases its allegations in duties purportedly found in the No-fault Act. Count VIII is a hybrid in which tort remedies are sought in a claim identified as one in assumpsit.

Defendants, furthermore, claim that D'Ambrosio

v. Pennsylvania National Mutual Casualty Insurance Co., 494 Pa. 501, 431 A. 2d 966 (1981) controls the questions presented in this case. Specifically, D'Ambrosio flatly rejected an attempt to convert an action in assumpsit for breach of a contract of insurance to an action in trespass for negligence. Defendant claims that although earlier demurrers were overruled, D'Ambrosio clarified and restated the relevant law, which requires re-examination of the sufficiency of the pleadings. Furthermore, defendant claims that plaintiff's allegations of negligent breach of contract are barred according to the principles of res judicata and collateral estoppel.

Plaintiff counters defendants' motion for summary judgment and argues that Judge Dwyer's overruling of defendants' preliminary objections sets forth a cause of action cognizable under Pennsylvania law. Further, plaintiff suggests that the law of Pennsylvania remains unchanged as applied to the instant action. Plaintiff asserts that this cause of action is presented to correct those technical defects which Judge Gelfand found in plaintiff's original cause.

## II. DISCUSSION

We reach the conclusion that defendants' motion for summary judgment must be granted for the following reasons:

(1) a motion for summary judgment may be subsequently filed to a motion on the pleadings,

(2) an insured is not entitled to supplement the remedies provided for by the Unfair Insurance Practices Act;

(3) an insured is not entitled to supplement the remedies provided for by the No-fault Motor Vehicle Insurance Act;

(4) punitive damages and damages for emo-

tional distress are not a permissible measure of damages in this action.

A. Motion for summary judgment may be subsequently filed to a motion on the pleadings.

Plaintiff argues that Judge Dwyer's overruling of defendants' preliminary objections sets forth a cause of action cognizable under Pennsylvania law. It is noted that a motion for judgment on the pleadings allows an overall examination of the pleadings. A motion on the pleadings is limited exclusively to the pleadings themselves, and no outside material may be considered. "The motion for summary judgment is designed to supplement the motion for judgment on the pleadings to provide for an equivalent summary disposition of the case where the pleadings may be sufficient, on their face, to withstand a demurrer but where, in actuality, there is no genuine issue of fact. . . . " Goodrich Amram 2d § 1035(a):3. Although preliminary objections have been ruled upon, a motion for summary judgment may subsequently be filed by either party. "That is, there is in the act of filing a preliminary objection no ground of waiver of the right to file a motion for summary judgment thereafter." 2B Anderson, Pennsylvania Civil Practice § 1035.6.

B. An insured is not entitled to supplement the remedies provided for by the Unfair Insurance Practices Act.

The Unfair Insurance Practices Act was adopted by our legislation in 1947 (Insurance Unfair Practice Act of June 5, 1947, P.L. 445 (40 P.S. § 1151 et seq.), whose purpose was the prevention of "acts, methods and practices by any and all persons engaged in the business of insurance, which constitutes unfair methods of competition and unfair or deceptive acts or practices." The Unfair Practice Act of 1947 was repealed in 1974, but rewritten as the Unfair Insurance Practices Act of June 5, 1974,

P.L. 589, 40 P.S. § 1171 et seq. (Supp. 1981) with the same purpose as the Unfair Practice Act of 1947.

Section 5 of the Act, 40 P.S. § 1171.5 defines "unfair methods of competition" and unfair or deceptive acts or practices "to include numerous forms of conduct. Of particular significance are the fifteen enumerated "unfair claim settlement or compromise practices" set forth in subsection (10).[1]

---

1. (10) Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices:

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

(ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

(iii) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

(iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

(v) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed and communicated to the company or its representative.

(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

(vii) Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

(viii) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

(ix) Attempting to settle or compromise claims on the basis of an application which was altered without notice to or knowledge or consent of the insured of such alteration at the time such alteration was made.

(x) Making claims payments to insureds or beneficiaries not

On July 8, 1981, the Pennsylvania Supreme Court rendered its decision in D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, 494 Pa. 501, 431 A. 2d 966 (1981). Justice Roberts, in writing for a majority of four,[2] affirmed the Superior Court, and found that an insured was not entitled to supplement remedies in

---

accompanied by a statement setting forth the coverage under which payments are being made.

(xi) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants to induce or compel them to accept settlements or compromises less than the amount awarded in arbitration.

(xii) Delaying the investigation or payment of claims by requiring the insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(xiii) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage or under other policies of insurance.

(xiv) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

(xv) Refusing payment of a claim solely on the basis of an insured's request to do so unless:

(a) The insured claims sovereign, eleemosynary, diplomatic, military service, or other immunity from suit or liability with respect to such claim;

(b) The insured is granted the right under the policy of insurance to consent to settlement of claims; or

(c) The refusal of payment is based upon the insurer's independent evaluation of the insured's liability based upon all available information: 40 P.S. §1171.5(10) (Supp. 1981).

2. Chief Justice O'Brien did not participate in the consideration or decision of the case. Justice Larsen filed a dissenting opinion which Justice Kauffman joined.

the Unfair Insurance Practices Act by an action in trespass to obtain damages for "emotional distress" and punitive damages, because of an insurer's alleged bad faith conduct in denying insured's claim. The court in D'Ambrosio concluded that there was no basis for the judicial creation of a cause of action for bad faith conduct. "These statutory prohibitions are enforced by the Insurance Commissioner of Pennsylvania, who is empowered to 'examine and investigate the affairs of every person engaged in the business of insurance in this state' to determine whether the Act has been violated: §7, 40 P.S. §1171.7." D'Ambrosio, 494 Pa. 501, 431 A. 2d at 969-70 (1981).

Quoting D'Ambrosio:

"(t)here is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act . . . must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,

'(t)he California courts have created this "new tort" in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection.

. . . State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations.'

Kircher, Insurer's Mistaken Judgment—A New Tort?, 59 Mar.L.Rev. 775, 786 (1976). Surely it is for the legislature to announce and implement the

Commonwealth's public policy governing the regulation of insurer carriers. In our view it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous." 494 Pa. 501, 431 A. 2d at 970 (1981)."

Plaintiff-insured in D'Ambrosio sought to recover damages for "emotional distress" and punitive damages because of the insurer's alleged "bad faith" conduct in denying the insured claim for repair to his motorboat and outboard motor. The court held that the count in trespass for alleged bad faith conduct of an insurer, which sought both punitive damages and damages for emotional distress must be rejected.

Plaintiff concedes that the D'Ambrosio Court would not judicially create a new cause of action in tort for bad faith breach of an insurance contract, and further, that the Unfair Insurance Practices Act does not create private right of action against an insurance carrier. Plaintiff, however, attempts to distinguish the instant case from D'Ambrosio on the grounds that defendants' conduct was outrageous, and due to defendants' conduct, plaintiff suffered physical injury. Plaintiff argues that under Restatement (Second) of Torts §46(1) (1965), defendants' conduct was sufficient "to make out at tort of 'outrageous conduct causing severe emotional distress.' " No matter how plaintiff labels defendants' conduct, plaintiff's action is still basically an action for the bad faith conduct of an insurer in denying an insured's claim.

Plaintiffs seek the same damages (punitive damages and damages for emotional distress) which the Supreme Court in D'Ambrosio has held plaintiffs cannot recover. See also Smith v. Harleysville Insurance Co., 494 Pa. 515, 431 A. 2d 974 (1981);

Nazer v. Safeguard Mutual Assurance Co., 293 Pa. Super. 385, 439 A. 2d 165 (1981).

C. An insured is not entitled to supplement the remedies provided for by the No-fault Motor Vehicle Insurance Act.

The Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq. (Supp. 1981) was adopted with one of its purposes being to provide a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims. Plaintiff, in the instant case, alleges "negligence per se" on the part of defendants for their failure to provide basic loss benefits pursuant to the Pennsylvania Motor Vehicle No-fault Insurance Act. The No-fault Insurance Act does not authorize an action in trespass to recover for mental distress or personal injuries resulting from non-payment of such benefits. The Unfair Insurance Practices Act provides for enforcement of alleged violations of the No-fault Motor Vehicle Insurance Act, see B supra. Therefore, plaintiff in the instant case cannot recover punitive damages and damages for emotional distress under the No-fault Motor Vehicle Insurance Act.

In Myers v. USAA Casualty Insurance Co., 298 Pa. Super. 366, 444 A. 2d 1217 (1982), plaintiff sought punitive damages on the basis that the insurer had allegedly acted willfully, intentionally, wantonly and recklessly in the handling of plaintiff's claim. Further plaintiff in Myers alleged that defendant had refused to make payments of medical bills, lost wages, impairment of earning capacity and loss of ability to work. Plaintiffs alleged that it was defendant's obligation to pay these sums under the Pennsylvania No-fault Motor Vehicle Insurance Act. Judge Rosenberg of the Court of Com-

mon Pleas of Philadelphia County ordered that plaintiff's complaint be stricken with prejudice. The Superior Court reversed and remanded for other reasons, but found that punitive damages could not be recovered from the insurer for acting willfully, intentionally, wantonly and recklessly in handling of claims under the No-fault Motor Vehicle Insurance Act. This decision was based on D'Ambrosio, supra and Smith v. Harleysville, supra.

D. Punitive damages and damages for emotional distress are not a permissible measure of damages in this action.

Plaintiff in the instant case demands compensation in the form of punitive damages for defendant's allegedly outrageous conduct in its alleged failure to comply with contractual obligations.

In essence, plaintiff's complaint is a claim for breach of an insurance contract. Punitive damages are not a recoverable element of damages in a case for breach of contract: Mazzula v. Monarch Life Insurance Co., 487 F. Supp. 1299 (E.D. Pa. 1980); Batka v. Liberty Mutual Insurance Co., 486 F. Supp. 582 (E.D. Pa. 1980); Fincke v. Phoenix Life Insurance Co., 488 F. Supp. 187 (W.D. Pa. 1978); D'Ambrosio, supra; Herzon v. Blue Cross of Lehigh Valley, 17 D. & C. 3d 80 (1980). Therefore, plaintiff is limited to a claim for compensatory damages, if any, which may arise as a consequence of defendant's alleged breach of contract. Punitive damages are awarded, however, for the purpose of punishing outrageous conduct of a defendant.

Furthermore, there is no recognized cause of action in Pennsylvania for mental suffering and personal injury resulting from breach of a contract of insurance: Carpel v. Saget Studios, 326 F. Supp. 1331 (E.D. Pa. 1971).

Pennsylvania has adopted Section 341 of the Restatement of Contracts. Section 341 provides that in an action for breach of contract, damages will not be given as compensation for mental suffering, except where the breach is accompanied by bodily injury and where it is caused intentionally or in a manner that is wanton or reckless. Wanton and reckless breaches of contract are further defined as requiring breaches of contract of such a character that the promisor had reason to know when the contract was made that its breach would cause mental suffering for reasons other than mere pecuniary loss: Carpel, supra, citing Emerman v. Baldwin, 186 Pa. Super. 561, 142 A. 2d 440 (1958). Plaintiffs have alleged no facts that defendants would have reason to know that when the contract was made that any breach of contract would cause emotional suffering for any reason, including mere pecuniary loss.

## III. CONCLUSION

Plaintiffs complaint states no cognizable cause of action and defendants' motion for summary judgment is hereby granted.