412 A.2d 638

**James T. RAAB and Constance Raab, his wife, Appellants,**

**v.**

**KEYSTONE INSURANCE COMPANY and Ed O'Keefe, Individually and as employee and claims supervisor for Keystone Insurance Company.**

Superior Court of Pennsylvania.

Argued March 21, 1979.

Filed Oct. 19, 1979.

Reargument Denied Jan. 7, 1980.

186

Anthony B. Quinn, Philadelphia, for appellants.

Hugh J. Hutchison, Philadelphia, for appellees.

Before PRICE, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

Appellee Keystone Insurance Company (Keystone) issued a no-fault automobile insurance policy to appellants. Appellant James Raab was subsequently injured in an automobile accident. He filed a claim under the policy, and Keystone began paying benefits pursuant thereto. A few months later, Keystone suspended payment. Appellants brought this action in trespass on the theories of 1) Keystone's negligent failure to pay benefits according to the insurance contract; and 2) Appellee O'Keefe's alleged malicious interference with the contractual relationship between appellants and Keystone, O'Keefe's employer. The court below sustained appellee's demurrer and dismissed the complaint.

▉ The issues raised on this appeal have been properly resolved in Judge Gelfand's Opinion for the court below, and we adopt that Opinion in relevant part:

The Complaint in trespass alleges that Defendants by failing to properly administer the business in which they were involved thereby acted in a negligent fashion in handling Plaintiff's no fault claim as a result of which Plaintiff husband sustained physical and emotional injuries. Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass. *Damian v. Hernon*, 102 Pa.Super. 539, 157 A. 520 (1931). However, there are circumstances out of which a breach of contract may give rise to an actionable tort. *Closed Circuit Corp. of America v. Jerrold Electronics Corp.*, 426 F.Supp. 361 (E.D.Pa., 1977). The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (mis-

feasance) rather than the mere failure to perform (nonfeasance). *Behrend v. Bell Telephone Company*, 53 D & C 2d 421 (1971), citing *Siegel v. Struble Bros.*, 150 Pa.Super. 343, 28 A.2d 352 (1942).

Plaintiffs allege that Defendant's negligence is grounded in their "failure" to take certain actions in the handling of Plaintiff's claim. Our examination of this alleged conduct indicates that it is in the nature of "nonfeasance" inasmuch as it is the "omitting to do, or not doing, something which ought to be done." *Nelson v. Duquesne L. Co.*, 338 Pa. 37 at 44, 12 A.2d 299 at 303 (1940). Accordingly, we find no cause of action in trespass for negligent breach of contract exists under the allegations made herein.

In addition, Plaintiffs seek compensation for physical injuries which resulted from emotional distress caused by Defendants' alleged negligence and request that punitive damages be assessed against them. Inasmuch as we have determined that Plaintiffs failed to set forth a cause of action in trespass for negligent breach of contract, these claims for damages must fall.

Further, Plaintiffs seek relief for conduct of the individual defendant, Ed O'Keefe, which they claim constitutes malicious interference with the contractual relationship between Plaintiffs and the Defendant Company.

In this regard, our appellate courts have held that "[i]f one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer." *Ramando v. Pure Oil Co.*, 159 Pa.Super. 217 at 224, 48 A.2d 156 at 160 (1946).

In the instant matter, Plaintiffs would have this court view O'Keefe, a claims supervisor employed by the Defendant Company, as a third party who interposed himself between two parties to an agreement. However, Plaintiffs aver in the Complaint that O'Keefe "at all relevant times was the agent, servant, and/or employee of the defendant, Keystone Insurance Company, at all times acting within the course of his employment and scope of

his authority, under and subject to the direct and exclusive control and supervision of the defendant. . . ." Inasmuch as Defendant Company can only act through its employees and O'Keefe is identified by Plaintiffs as the individual responsible for failing to authorize payments, the individual Defendant and the Company defendant are one and the same entity for purposes of this action. Consequently, there is no third party against who [sic] a claim of interference with contract can lie. Hence, Defendants' demurrer to Plaintiffs' contention that O'Keefe's conduct constituted malicious interference with a contractual relationship must be sustained.

Accordingly, it is the view of this Court, for the reasons heretofore expressed, that Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted. (Footnotes omitted.)

Order affirmed.

PRICE, J., files a concurring statement.

SPAETH, J., files a dissenting opinion.

PRICE, Judge, concurring:

I would affirm on the basis of *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 262 Pa.Super. 331, 396 A.2d 780 (1978).

SPAETH, Judge, dissenting:

In *D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.*, 262 Pa.Super. 331, 341, 396 A.2d 780, 784 (1978) (Opinion in Support of Reversal), *petition for allowance of appeal to Supreme Court granted* March 28, 1979, on behalf of the President Judge and myself, I collected cases from other jurisdictions that recognize the tort of breach of an insurer's duty of good faith and fair dealing. Specifically, I quoted with approval the following language from *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 573, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1037 (1973):

[I]n the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an

insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. . . . It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

In the present case, the complaint alleges the following facts. Appellant James Raab was insured by appellee Keystone Insurance Company for casualty benefits under the No-fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101 *et seq.* (Supp.1979–80). On April 17, 1976, Mr. Raab was involved in a motor vehicle accident. Keystone was timely notified of the accident, and Mr. Raab submitted to Keystone the claims forms requested by it, and forwarded his medical bills, which totalled $13,000. Initially, Keystone made payments on the medical bills and also paid Mr. Raab for wage losses. However, in mid-July 1976 Keystone stopped making payments with the result that Mr. Raab has not been paid for the greater part of his medical expenses and is now receiving no payments for wage losses. The complaint further alleges that Keystone has refused to make payments for wage loss despite knowing full well that Mr. Raab is totally and permanently disabled as a result of the injuries he sustained in the accident, and that contrary to its statutory and contractual duties, Keystone has recklessly disregarded Mr. Raab's right to prompt payment, and has recklessly and carelessly allowed Mr. Raab to remain in such an impecunious position that he has had to seek public relief and assistance, much to his great dismay and embarrassment. Finally, the complaint alleges in detail physical, pecuniary, and emotional damages suffered by the Raabs as a result of Keystone's conduct.

I believe that this complaint, while not a model pleading, alleges facts that if proved will establish that Keystone

refused without proper cause to compensate Mr. Raab for a loss covered by its policy, and that it thereby breached its duty to deal fairly and in good faith with Mr. Raab as its insured. Moreover, if any question exists whether the complaint sets forth facts sufficient to state this tort, the remedy is not to dismiss the complaint but to allow the Raabs to amend it. *See, e. g., Harkins v. Zamichieli,* 266 Pa.Super. 401, 405 A.2d 495 (1979); *Allied Security, Inc. v. Security Unlimited, Inc.,* 265 Pa.Super. 267, 401 A.2d 1219 (1979); 2 Goodrich-Amram 2d § 1017(b): 11 at 84 ("Judgment [dismissing action on pleadings] should be entered in clear cases only, and should never be entered against a plaintiff if the pleadings indicate that he could state a better case by amendment") (footnotes omitted).

I also disagree with the lower court's and the majority's holding that the Raabs' complaint failed to state a cause of action against appellee Ed O'Keefe because the complaint alleged that O'Keefe "at all relevant times was the agent, servant, and/or employee of the Defendant, Keystone Insurance Company, at all times acting within the course of his employment and scope of his authority, under and subject to the direct and exclusive control and supervision of [Keystone] . . . ." The lower court reasoned that

> [i]nasmuch as Defendant Company can only act through its employees and O'Keefe is identified by Plaintiffs as the individual responsible for failing to authorize benefits payments, the individual Defendant and the company Defendant are one and the same entity for purposes of this action. Consequently, there is no third party against who[m] a claim of interference with contract can lie. Hence, Defendants' demurrer to Plaintiffs' contention that O'Keefe's conduct constituted malicious interference with a contractual relationship must be sustained.

Slip op. at 7.

Prosser states that the tort of malicious interference with contractual relations has been allowed "where the defendant, as agent of the promisor, has himself misdirected performance." W. Prosser, Law of Torts, § 129 at 935 (4th ed.

1971). It is true that some cases have afforded absolute exemption from liability for this tort on reasoning similar to the lower court's. Those cases, however, have to my mind been decisively criticized:

[Their result] has been variously based on the agent's being the alter ego of the principal; upon the "absurd result" of the principal being liable to the promisee in tort for breaking his own contract if the doctrine of *respondeat superior* be applied; and upon a desire to protect the discharge of fiduciary obligations. However, other authorities, although they agree as to the social desirability of granting a privilege to protect the interest of the principal, make that privilege conditional upon the agent's having in fact acted to protect his principal's welfare, thus imposing liability where such purpose was absent. To free the agent from this liability for his own tortious conduct merely because a court may subsequently prefer not to impose vicarious liability on the principal would seem to be undesirable and illogical. Furthermore, a recognition of the fact that the tort action for inducing breach of contract was intended as a remedy for intentionally inflicted damage not recoverable in a suit on the contract, would indicate that there is no less reason for holding a principal vicariously liable for this tort than for other intentional wrongs of the agent which are not committed for the benefit of the principal. Privileges which constitute valid defenses in analogous situations involving interference with contract rights, and justifications of other intentional torts are recognized for reasons of social policy to further certain specific interests, and are conditional upon their being used to assert the interests protected. In the absence of any reason to extend the privilege of the agent in the instant case beyond the limits for which it was created, it would seem preferable that it, too, be granted as conditional rather than absolute. 89 U. of Pa.L.Rev. 250–51 (1940).

Contrary to the implication in Keystone's brief, the Restatement (Second) of Torts § 766 (1979) does not take the position that an agent should be absolutely immune from the

tort of malicious interference with contractual relations. To the extent that the Restatement's silence on the issue can be read as favoring or disfavoring absolute immunity, it appears to disfavor it, since the drafters did not choose to carve out an explicit exception to the general application of the factors listed in § 767.*

Finally, and again, if any deficiency exists in the facts alleged in the complaint against O'Keefe, the proper remedy is not to dismiss the complaint but to allow the Raabs to amend it.

The order of the lower court should be reversed.

* Section 767 states:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
    (a) the nature of the actor's conduct,
    (b) the actor's motive,
    (c) the interests of the other with which the actor's conduct interferes,
    (d) the interests sought to be advanced by the actor,
    (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
    (f) the proximity or remoteness of the actor's conduct to the interference and
    (g) the relations between the parties.

The Restatement's balancing approach towards liability for this tort directly conflicts with the lower court's theory of absolute immunity.