623 A.2d 933

George F. GRODE, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff,

v.

The MUTUAL FIRE, MARINE, AND INLAND INSURANCE COMPANY, Defendant.

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, as Rehabilitator of the Mutual Fire, Marine & Inland Insurance Company, Plaintiff,

v.

The MacDONALD COMPANIES, INC., formerly J. Neale MacDonald, Company, Inc., Defendant.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1993.

Decided March 24, 1993.

See also 154 Pa.Cmwlth. 356, 623 A.2d 928.

E. Michael Keating, III and James O. Carpenter, for plaintiffs.

Edward C. German and Frank A. Gerolamo, for defendants.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The defendant, The MacDonald Companies, Inc. (Mac-Donald) files preliminary objections to a complaint filed in this Court by the plaintiff, Rehabilitator of The Mutual Fire, Marine and Inland Insurance Company (Mutual Fire).[1]

1. The Insurance Commissioner brings this complaint in her capacity as statutory rehabilitator of Mutual Fire, which this Court has found to be insolvent and has ordered into rehabilitation. *See* Section 515 of the Insurance Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. § 221.15. For purposes of clarity and simplicity, we shall refer to the plaintiff hereinafter as Mutual Fire.

In 1983, MacDonald entered into a contract with Mutual Fire to provide administrative, investigative and adjustment services to Mutual Fire in connection with various insurance policies. Mutual Fire filed a complaint against MacDonald in 1992, alleging, *inter alia,* damages in tort against MacDonald for mishandling various claims in an administrative capacity on behalf of Mutual Fire, and for procuring Wal–Mart Stores to become a Mutual Fire insured at an excessively low premium relative to the risk involved. MacDonald filed preliminary objections to the complaint, and Mutual Fire filed a response to those objections.

## I. Attachment of Documents

### MacDonald's Preliminary Objection I

MacDonald first objects to the failure of Mutual Fire to attach certain documents to its pleading. Mutual Fire admits in its response that it failed to attach the documents in question, and at oral argument agreed to provide MacDonald with the documents forthwith. Therefore, we will overrule this objection on the premise that Mutual Fire will comply with its assurance to provide MacDonald with the documents identified in paragraph five of MacDonald's preliminary objections.

## II. Tort vs. Contract Action

### MacDonald's Preliminary Objection II

MacDonald's second objection is based upon what it believes to be an impermissible attempt by Mutual Fire to create a tort action from what MacDonald considers to be a contract action. Mutual Fire's complaint alleges causes of action for negligence, fraudulent misrepresentations, negligent misrepresentations, and fraud. MacDonald submits that the complaint fails to state claims for which relief can be granted because the relationship of the parties was at all times governed by various contracts and because the claims allege solely economic loss. The question we must decide is whether

at this stage of the case Mutual Fire can go beyond contractual remedies, if any, and proceed with its tort claims.

Before discussing specifically the case before the Court, we have undertaken a broad review of the circumstances under which the facts of a contract claim may also support a recovery in tort. Curiously, we have found in a sister state an admirable and extensive explanation of the somewhat confused state of Pennsylvania law on this question. *See Public Service Enterprise Group, Inc. v. Philadelphia Electric Co.,* 722 F.Supp. 184 (D.N.J.1989). In that case, defendant, operating owner of a nuclear power plant, moved to dismiss a claim brought by certain co-owners which was grounded in breach of contract and tort in regard to a shut-down of the plant by the Nuclear Regulatory Commission. The Court noted first that Pennsylvania law is hostile to the recovery of economic losses in tort, at least where there is a lack of contractual privity, and that there is not even a nuclear accident exception to this economic loss rule. *Id.* at 193–194.

As far as situations involving contractual relationships are concerned, the Court next noted the United States Supreme Court decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), which held that when a party in privity of contract with another suffers an injury to a product itself, resulting in a purely economic loss, there is no product liability cause of action. *Public Service,* 722 F.Supp. at 195. This holding was applied by the Superior Court of Pennsylvania in *REM Coal Co. v. Clark Equipment Co.,* 386 Pa.Superior Ct. 401, 563 A.2d 128 (1989), which MacDonald relies upon, but which also involved a manufactured product rather than a professional service such as is before us now.[2]

The federal district court in *Public Service* next pointed to what appeared to be an extension under Pennsylvania law of the *East River* holding beyond manufactured goods, to professional services, in *PPG Industries, Inc. v. Sundstrand Corp.,* 681 F.Supp. 287 (W.D.Pa.1988). *Public Service,* 722 F.Supp.

2. *Public Service* did not discuss *REM Coal,* as both decisions were filed in August, 1989.

at 198. The *PPG Industries* decision, the *Public Service* court explained, did not view such an extension as imperiling malpractice law, because the "special non-contractual duties of professionals such as doctors, lawyers and architects enforced by tort law were created in part to make up for the lack of sophistication and bargaining power of those seeking these professional services," as opposed to the conditions that normally obtain in service contracts between two commercial parties. *PPG Industries,* 681 F.Supp. at 290.

On the other hand, the *Public Service* court reviewed certain principles which were set forth by the Superior Court of Pennsylvania in *Raab v. Keystone Insurance Co.,* 271 Pa.Superior Ct. 185, 187–188, 412 A.2d 638, 639. (1979), *appeal dismissed,* 496 Pa. 414, 437 A.2d 941 (1981) (citations omitted), to guide the resolution of the question at hand. These principles are:

> Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass. However, there are circumstances out of which a breach of contract may give rise to an actionable tort. The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance).

Under *Raab,* therefore, a suit between parties to a contract based on negligent breach of contract may be brought in tort only when the plaintiff alleges improper performance of a contract, rather than nonperformance. *Hirsch v. Mount Carmel Dist. Ind. Fund, Inc.,* 363 Pa.Superior Ct. 433, 435, 526 A.2d 422, 423 (1987).[3]

3. There are several cases which appear to represent another line of reasoning on the question before us. These cases, like *Raab,* begin with the premise that courts have been reluctant to permit tort recovery for contractual breaches, but that this reluctance is not ironclad. *See Wood & Locker, Inc. v. Doran and Associates,* 708 F.Supp. 684 (W.D.Pa.1989). The deciding factor in these cases, however, is not the misfeasance/nonfeasance distinction, but rather that a tort claim may be maintained only when "the wrong ascribed to the defendant ... [is] the gist of the action, the contract being collateral." *Id.* at 689, citing *Closed Circuit*

The *Public Service* court next cited several decisions allowing recovery of economic losses in tort for the negligent provision of services, including *Randall, Inc. v. AFA Protective Sys., Inc.*, 516 F.Supp. 1122 (E.D.Pa.1981), *aff'd,* 688 F.2d 820 (3d Cir.1982) (plaintiff recovered economic loss in tort from a defendant who breached a contract to service a burglar alarm system), and *Garbish v. Malvern Federal Sav. & Loan Assn.*, 358 Pa.Superior Ct. 282, 517 A.2d 547 (1986), *petition for allowance of appeal denied,* 516 Pa. 641, 533 A.2d 712 (1987) (agent/lender held liable in tort to a plaintiff home buyer for improperly disbursing funds for the construction of plaintiff's house). *Public Service,* 722 F.Supp. at 203.

To counter cases such as these, MacDonald refers us to *Sadtler v. Jackson–Cross Co.*, 402 Pa.Superior Ct. 492, 587 A.2d 727 (1991), the applicability of which we find to be merely superficial. That case held that the defendant's failure to make a competent and accurate real estate appraisal was a violation of a duty imposed by a contract with the plaintiff, not a violation of separate principles of tort law, and, therefore, the plaintiff's cause of action sounded in contract. The holding, however, did not rely on any analysis under *Raab, East River* or other caselaw. Further, the effect of the decision was to save plaintiff's claim from summary judgment by using the statute of limitations under contracts rather than the

*Corp. v. Jerrold Electronics,* 426 F.Supp. 361, 364 (E.D.Pa.1977) (citing 1 C.J.S. Actions § 46). In *Wood & Locker,* the Court decided that the plaintiff's count in question was nothing more than a claim that the defendants failed to discharge duties under certain agreements between them, that the contract was not collateral to the injury, and that therefore the count had to be dismissed. *Id.* Similarly, in *Bash v. Bell Telephone Co.*, 411 Pa.Superior Ct. 347, 601 A.2d 825 (1992), the Superior Court looked at whether the contract was collateral to the alleged wrong, and concluded that it was not; the obligations involved there were found to be a matter of private contract law, and, thus, the trial court was held to have properly sustained the preliminary objections to plaintiff's negligence count. *Id.* at 355–357, 601 A.2d at 829–830.

These cases in essence have the same underlying rationale as the *Raab* cases, both requiring at bottom an analysis of how much the claims in the pleadings relate to the contracts involved. As the rationales are so close, as the necessary analysis can be performed under *Raab,* and as the *Raab* rationale has been cited and employed most often, we shall not further discuss the cases cited in this footnote.

shorter period for torts. We cannot read this case as holding that tort claims can never arise from contractual service relationships.

The *Public Service* court concluded that, notwithstanding *PPG Industries,* there is simply too much Pennsylvania case law allowing tort recovery in contractual relationships to allow a motion to dismiss a claim such as the one before it. *Public Service* at 211. It distinguished *PPG Industries* as most plausibly read as a products, rather than services, case, and found that no Pennsylvania court, particularly including the Pennsylvania Supreme Court, had as yet even discussed the United States Supreme Court's *East River* decision.[4] *Public Service,* 722 F.Supp. at 211–212.

We agree with the *Public Service* holding that a "substantial body of Pennsylvania case law holds a defendant liable in tort for misfeasance in the performance of a contract," that it cannot be said with any kind of assurance that the Pennsylvania Courts have extended or will extend *East River* to professional services, and that, therefore, a tort claim in a contractual relationship for services should not be dismissed at an early stage of proceedings prior to the production of evidence. *Public Service,* 722 F.Supp. at 212. On a motion to dismiss, the *Public Service* court would not hazard a guess that the prohibitions of *East River* and *REM* were to be extended beyond the product/warranty context, and neither will we do so here.

In allowing Mutual Fire to proceed with its tort claims in the case before us, we do not venture so far as to endorse the

4. Moreover, several cases decided after *East River* have applied the misfeasance/nonfeasance principle of *Raab* and *Hirsch. See, e.g., Hough/Loew Associates, Inc. v. CLX Realty Co.,* 760 F.Supp. 1141 (E.D.Pa.1991), *vacated in part on reconsideration,* (E.D.Pa. May 21, 1991, No. Civ.A. 90–5859, 1991 WL 86937) (claim for negligent breach of contract dismissed because gravamen of claim was that defendants did not undertake to comply with their contractual obligations, not that defendants failed in the course of attempting to comply with their contractual obligations); *Fink v. Delaware Valley HMO,* 417 Pa.Superior Ct. 287, 612 A.2d 485 (1992) (negligence and malpractice allegations regarding medical services rose to the level of misfeasance and thus were distinct from claim of breach of contract, though pre-empted by federal law).

misfeasance/nonfeasance distinction of *Raab* and *Hirsch,* or to limit ourselves to that distinction in further proceedings.[5] We need only note that Mutual Fire has alleged misfeasance in this case. MacDonald does not argue otherwise; its primary argument, which we have rejected, is essentially that *East River* and *REM* apply. We find it clear from Mutual Fire's complaint that it is alleging negligent and fraudulent performance under the contractual relationship, rather than a failure to perform. Therefore, we do not reach the question of whether tort claims might also sound in instances of contractual nonfeasance.

Finally, it is important to reiterate that our ruling here is made at an early stage of the case, on preliminary objections. Thus, we are only holding that the case before us is permitted to proceed on both contract and tort theories. The Court will have future decisions to make in this case either at trial or on motions for summary judgment after the facts are developed. It may well be, when evidence is developed at a later stage, that a tort claim will not be supportable. The relevance of the procedural posture of a case which we emphasize here was also recognized by the *Public Service* court: "The imposition of common law tort duties can often depend upon policy considerations heavily influenced by the factual context from which a case emerges. Development of the factual record will provide us with greater insight into the relationship among these parties ..." *Public Service,* 722 F.Supp. at 212.

We hold that under the law, Mutual Fire has sufficiently pled causes of action for which relief can be granted. Therefore, MacDonald's preliminary objection here is overruled.

### III. Punitive Damages

#### MacDonald's Preliminary Objection III

■■ MacDonald's third objection is that punitive damages, pled by Mutual Fire, are not recoverable in contract actions. *See, e.g., Standard Pipeline Coating Co. v. Solomon & Teslo-*

---

5. It has been recognized that there is a split in authority as to whether this historic distinction retains vitality. *See Hirsch,* 363 Pa.Super. at 436, n. 2, 526 A.2d at 423, n. 2., discussing the Restatement (Second) of Torts § 323 (1965).

*vich, Inc.,* 344 Pa.Superior Ct. 367, 496 A.2d 840 (1985). Our determination that this action properly states causes of action in tort, and is not limited to contractual remedies at this stage, disposes of this argument.

We do not suggest that Mutual Fire will be entitled to recover punitive damages; that we have decided in this case to allow causes of action in tort despite a contractual relationship does not mean that the contractual relationship will not bear great weight on the question of potential damages.[6] However, where a tort action lies, as we have decided is the case here, punitive damages can be awarded, and thus the preliminary objection is overruled.

## IV. Additional Damages

### First Part of MacDonald's Preliminary Objection IV

■ MacDonald next objects to a request by Mutual Fire for "additional damages," arguing there is no reference to a substantive basis for these damages. We agree. We think Mutual Fire has not sufficiently set forth the type of damages it is seeking here and the legal basis for those damages. However, we will allow Mutual Fire leave to amend to set out specifically the basis for any additional damages. Therefore, this objection is sustained and the count for additional damages is dismissed, with leave to amend.

## V. Indemnification

### Second Part of MacDonald's Preliminary Objection IV

■ Finally, MacDonald argues that Mutual Fire has failed to identify the basis of relief for its request for indemnification, and therefore failed to state a cause of action upon which

6. The *Public Service* court wrote, "[t]he fact that the plaintiffs may possess tort claims, or that defendant's conduct might be evaluated by reference to negligence principles, does not necessarily mean that they will be entitled to damage instructions on punitive damages or other tort concepts," and noted that, "in many of the economic loss cases which have turned on tort principles, the responsibility of the defendant for damages was often determined primarily by reference to the contract." *Public Service,* 722 F.Supp. at 212–213 (citations omitted). Thus, damages recovered by Mutual Fire, if any, may turn out to be contract damages, as contract damages are well-suited to claims of economic loss. *Public Service,* 722 F.Supp. at 213.

relief can be granted. We also agree in this instance. The remedy of indemnity is a device for shifting liability from one tortfeasor to another. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Superior Ct. 444, 467 A.2d 615 (1983). The common law right of indemnity requested by Mutual Fire is a fault shifting mechanism operable only when a defendant who has been held liable to a plaintiff solely by operation of law seeks to recover his loss from a defendant who is actually responsible for the accident which occasioned the loss. *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 506 A.2d 868 (1986). No such situation exists or is alleged to exist in this case.[7] Therefore, we will sustain MacDonald's objection and dismiss the indemnity count.

## Conclusion

MacDonald's preliminary objection based on Mutual Fire's failure to provide documents is overruled, with the qualification and expectation that Mutual Fire will provide MacDonald with the documents detailed in paragraph five of MacDonald's preliminary objections. The preliminary objection as to the causes of action in tort is overruled. The preliminary objection as to punitive damages is overruled. The preliminary objection to additional damages is sustained, and Count XVIII of Mutual Fire's complaint is dismissed with leave for Mutual Fire to amend its complaint with specificity as to such damages. The preliminary objection regarding indemnification is sustained, and Count XIX of Mutual Fire's complaint is dismissed.

## ORDER

AND NOW, this 24th day of March, 1993, upon consideration of the preliminary objections of the defendant and the

---

7. Mutual Fire relies on two cases which are inapposite to the one before us. The first, *B & B Investment Club v. Kleinert's, Inc.*, 391 F.Supp. 720 (1975), involved a third-party complaint and an attempt to pass off to a third party the financial responsibility for a legal liability. Similarly, the second case, *Mixter v. Mack Trucks, Inc.*, 224 Pa.Superior Ct. 313, 308 A.2d 139 (1973), involved the right to indemnification between two parties who both had become liable for injury to a third party. In the case before us now, by contrast, there is no alleged legal liability to another party.

plaintiff's response thereto, the defendant's preliminary objection based on the plaintiff's failure to provide documents (Defendant's Preliminary Objection I) is overruled, with the qualification and the expectation that plaintiff will provide defendant with the documents detailed in paragraph five of the defendant's preliminary objections; the preliminary objection as to the causes of action in tort (Defendant's Preliminary Objection II) is overruled; the preliminary objection as to punitive damages (Defendant's Preliminary Objection III) is overruled; the preliminary objection to additional damages (first part of Defendant's Preliminary Objection IV) is sustained, and Plaintiff's Count XVIII is dismissed with leave for the plaintiff to amend its complaint with specificity as to such damages; the preliminary objection regarding indemnification (second part of Defendant's Preliminary Objection IV) is sustained, and Plaintiff's Count XIX is dismissed.