**CAUDILL SEED AND WAREHOUSE COMPANY, INC., Plaintiff,**

v.

**PROPHET 21, INC., Defendant.**

**No. CIV. A. 00–3712.**

United States District Court, E.D. Pennsylvania.

Nov. 22, 2000.

Edward I. Swichar, Philadelphia, PA, for Plaintiff.

Ellen E. Farina, Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Now before the Court is the motion of defendant Prophet 21, Inc., to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Document No. 7), and the response of plaintiff Caudill Seed and Warehouse Company, Inc. (Document No. 10 and 11 (duplicates)). This action arises out of a licensing agreement under which defendant was to provide computer software to assist plaintiff's wholesale business.[1] The relationship between the parties allegedly deteriorated when the software failed to function as defendant Prophet 21 represented it would. Plaintiff Caudill claims that the software has never performed as promised, that Prophet 21 failed to fix problems with the software despite numerous requests from Caudill, and that Caudill consequently was forced to obtain software from another company.

Prophet 21 argues that all plaintiff's claims should be dismissed because the licensing agreement limits plaintiff's remedies to repair or replace measures. Prophet 21 also contends that plaintiff's has not stated a claim for breach of warranty and that plaintiff's fraud claim is merely another contract claim disguised as a tort allegation. Plaintiff counters that the limitation on liability clause does not operate to defeat its claims, and that its fraud claim is viable. Upon consideration, the motion to dismiss will be granted in part and denied in part.[2]

Rule 12 (b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Because the Federal Rules of

---

1. All facts are taken as true from the complaint, as required by law.

2. Because the parties are diverse and the amount in controversy exceeds $75,000, this action is properly before the Court under 28 U.S.C. § 1332. Both parties acknowledge that Pennsylvania law controls here, and therefore, my task as a federal district court sitting in diversity is to apply substantive state law as interpreted by the Supreme Court of Pennsylvania. *See Connecticut Mut. Life Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). In the absence of a definitive ruling by the state's highest court, this Court must predict how the Supreme Court of Pennsylvania would rule if presented with the question. *See Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir.1990). In so doing, the court "must consider and give due regard to the decisions of intermediate appellate courts as well as other state courts as indicia of how the state's highest court would decide a matter." *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir.1985) (citing *Wyman,* 718 F.2d at 65; *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981)).

Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A motion to dismiss should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### Warrant Clause and Failure of Exclusive Remedy

Prophet 21 argues that all of plaintiff Caudill's claims fail because a limitation on liability clause contained in the licensing agreement restricted Caudill to the limited, exclusive remedies set forth in the warranty clause.

The licensing agreement at issue contains the following limitation clause:

LIMITATION OF LIABILITY. In no event shall Prophet 21 be liable for any direct, indirect, consequential or resulting damages or injury due to failure of, or otherwise arising out of the Software, or for any lost profits, time, business, records, or other monetary damages, nor for any claim or demand against Licensee by any other person. Licensee shall indemnify and hold Prophet 21 harmless against any claim asserted against Prophet 21 as a result of, or arising out of Licensee's use of the Software. LICENSEE'S SOLE AND EX-CLUSIVE REMEDY FOR ANY FAIL-URE OF THE SOFTWARE SHALL BE THE WARRANTIES CON-TAINED HEREIN AND THESE ARE IN LIEU OF ANY AND ALL OTHER WARRANTIES. THERE ARE NO WARRANTIES OF MERCHANTA-BILITY OR FITNESS FOR A PAR-TICULAR PURPOSE EXCEPT AS HEREIN EXPRESSLY PROVIDED. UNDER NO CIRCUMSTANCES WILL PROPHET 21'S LIABILITY EXCEED THE COST OF THE SOFT-WARE SET FORTH ON THE SCHEDULE.

(Defendant's Exh. 1, Software License Agreement, at ¶ 16.)

That warranty clause referred to in the above-quoted provision provides:

WARRANTY SOFTWARE. Prophet warrants that (i) it has the right to license the Software to Licensee; (ii) the Software shall operate in conformity with the then current Documentation; (iii) if the licensed Software fails to function in accordance with this Documentation, Prophet 21 will, for a period of one (1) year from the date of shipment, without charge to Licensee, make all corrections required to make the Software operate. The Licensee is responsible for sending evidence of the nonconformity to Prophet 21. Prophet 21 will respond by finding the cause of the nonconformity and correcting the same. Licensee is responsible for installing any such Software correction. Prophet 21 does not warrant that the Software will meet all of Licensee's requirements nor that the use of the Software will be uninterrupted or error free. Warranty of the Software is separate from maintenance and support of the Software. Refer to Paragraph 7 for Software maintenance and service offerings.

(Defendant's Exh. 1, Software Licensing Agreement, at ¶ 11.) Prophet 21 argues that Caudill's only remedy under this "repair or replace" warranty clause is for Prophet 21 to "find[ ]" and "correct[ ]" the inoperative software.

Commercial contracts in Pennsylvania are governed by the Pennsylvania Commercial Code—Pennsylvania's version of the Uniform Commercial Code (UCC)—which addresses the limitation of remedies:

■ (a) General rule.—Subject to the provisions of subsections (b) and (c) and of section 2718 (relating to liquidation or limitation of damages; deposits):

(1) The agreement may provide for remedies in addition to or in substitution for those provided in this division and may limit or alter the measure of

damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.

(2) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(b) Exclusive remedy failing in purpose.—Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

(c) Limitation of consequential damages.—Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

13 Pa.C.S.A. § 2719. Thus, under Pennsylvania law, limitation of liability clauses in commercial contracts generally are valid and enforced by the courts. *See Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 204 (3d Cir.1995). However, § 2719 sets forth exceptions to that general rule. This case centers around the "essential purpose" exception of § 2719(b); whether the exclusive remedy—the express warranty to repair or replace the software— "fail[ed] of its essential purpose."

The comment to § 2719(b) explains that "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of its bargain, it must give way to the general remedy provisions of this Article." 13 Pa.C.S.

§ 2719(b), cmt. 1. A finding that the essential purpose of a remedy was not satisfied typically arises "when the exclusive remedy involves replacement or repair of defective parts, and the seller because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 557, 564 A.2d 919 (1989) (quoting White, J.J. & Summers R.S., *Uniform Commercial Code*, at 469 (2d ed. 1980)); *see also Riegel Power Corp. v. Voith Hydro*, 888 F.2d 1043, 1046 (4th Cir.1989) ("Generally, in the commercial cases, the 'essential purpose' exclusion arises only where the seller has refused to make repairs as he was required or where he cannot repair the product.").

■ This is precisely what occurred in this case, according to plaintiff's complaint. The exclusive remedy here involved the repair or replacement of defective software, and plaintiff alleges that the software was never repaired or replaced because of the negligent, reckless, or intentional conduct of Prophet 21. (Complaint, at ¶¶ 15–19, 31, 32.) Drawing all inferences in favor of the plaintiff, as required by law, I believe that plaintiff Caudill has asserted that defendant refused to repair or replace the software at issue, and thus pled the precise facts required to sustain a claim that an exclusive remedy failed in its essential purpose. Accordingly, I conclude that Caudill has stated a claim that the exclusive remedy for breach of warranty in the licensing agreement between Caudill and Prophet 21 failed in its essential purpose, and therefore, the limitation on liability clause does not operate to defeat all of plaintiff's claims.[3]

---

**3.** I wish to make explicit what is implicit in this conclusion; that Caudill has stated a claim for breach of express warranty. I conclude that Caudill has adequately stated a claim for relief as to breach of express warranties. In its amended complaint, plaintiff avers that the software did not operate in conformity with representations made by Prophet 21, and that Prophet 21 failed to make corrections required to make the software operate. (Amended Complaint, at ¶¶ 13, 15, 18, 19, 38, 39, 41.) This alleged conduct is inconsistent with the warranty, under which Prophet 21 was required to find and correct software failures. (Defendant's Exh. 1, Software Licensing Agreement, at ¶ 11.)

## Disclaimer of Damages

My conclusion that plaintiff has stated a claim that the exclusive remedy in this case failed in its essential purpose raises an interesting question the enforceability of the remainder of the limitation on liability clause, particularly the damages disclaimer. The limitation on liability clause in the licensing agreement that restricts plaintiff to the "exclusive remedy" of repair or replace also provides that Prophet 21 will "in no event" be liable for direct, indirect, consequential or resulting damages arising out of the failure of the software. (Defendant's Exh. 1, Software Licensing Agreement, at ¶ 16.) Prophet 21 argues that the limitation on liability clause, to which Caudill agreed when it signed the contract, prevents Caudill from recovering direct, indirect compensatory damages, consequential damages, or punitive damages related to the alleged failure of the software. Caudill contends that because the only remedy available in the agreement has failed in its essential purpose, the damages disclaimer fails as well and Caudill is entitled the full range of damages available under the UCC, including compensatory and consequential damages.

The parties have stumbled into a legal quagmire that has divided courts across the nation. The controversy is over whether the failure of an exclusive remedy referenced in a limitation on liability clause should result in the mooting of the remaining limitations on liability, including damage disclaimers. In other words, is a limitation on liability clause a house of cards that collapses when the exclusive remedy card is removed? Neither the Supreme Court of Pennsylvania nor the Superior Court of Pennsylvania has shed any light on this question.[4] Though the Court of Appeals for the Third Circuit has never addressed this question applying Pennsylvania law, it has interpreted identical language under the laws of two other jurisdictions and reached directly opposite results. *Compare Chatlos Sys., Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir.1980) ("The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty.... The former survives unless it fails of its

Therefore, I conclude that plaintiff has adequately averred that Prophet 21 breached the express warranties in the licensing agreement, and the motion of Prophet 21 to dismiss Count III of the complaint is denied as to express warranties.

However, Prophet 21 is correct in arguing that plaintiff's assertion of breach of implied warranties in Count III directly contravenes the language of the limitation on liability clause, and thus Count III should be dismissed. I read the limitation on liability clause to waive claims for implied warranties, and Caudill does not press any arguments concerning breach of implied warranties in its response.

**4.** My research reveals that the closest any Pennsylvania court came to addressing the issue was when the Superior Court considered a plaintiff's contention that a repair or replace remedy failed in its essential purpose. *See New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 564 A.2d 919 (1989). The Superior Court held that plaintiff had not preserved the issue for appeal, and that, regardless, the remedy had

not failed in its essential purpose. *See id.*, at 558, 564 A.2d 919. The court also observed, "Since we decide that the exclusive remedy provisions have not failed of their essential purpose, we need not decide the related and more difficult issue of the effect of such a failure on the limitation of liability provision." *Id.* at 558 n. 7, 564 A.2d 919.

The Superior Court of Pennsylvania considered whether an exclusive remedy failed in its essential purpose under § 2719 twice before and, in both cases, found that the remedy had not failed in its essential purpose. *See Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 264 (1997) (existence of latent defect did not cause exclusive remedy to fail in its essential purpose); *Metalized Ceramics for Elecs., Inc. v. National Ammonia Co.*, 444 Pa.Super. 238, 247, 663 A.2d 762 (1995) (exclusive remedies provision only arose if buyer failed to inspect product, and thus created incentive for plaintiff to inspect, which plaintiff did not do; failure was plaintiff's, not the remedy provision). Therefore, those decisions did not consider the effect of a finding that a remedy failed in its essential purpose on damages disclaimers.

essential purpose, while the latter is valid unless it is unconscionable.")[5] *with Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 625 (3d Cir.1990) (holding that where an exclusive remedy fails in its essential purpose, the buyer can proceed to any remedy available under the UCC, including consequential damages, even if excluded by contract).[6] Thus, there is no controlling legal authority to direct me in my consideration of the law, and I must predict how the Supreme Court of Pennsylvania would decide this issue. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990).

District courts within the Third Circuit have generally favored the *Chatlos* approach of enforcing damage disclaimers even when the exclusive remedy is found to have failed of its essential purpose. *See Northeastern Power Co. v. Balcke–Durr, Inc.*, 1999 WL 674332 at 17, No. 97–4836, 1999 U.S. Dist. LEXIS 13437, at *54–55 (E.D.Pa. Aug. 23, 1999); *Otobai, Inc. v. Auto Tell Services*, 1994 WL 249766 at 11, No. 93–2855, 1994 U.S. Dist. LEXIS 7592, at *33 (E.D. Pa. June 1, 1994); *Middletown Concrete Prods., Inc. v. Black Clawson Co.*, 802 F.Supp. 1135, 1150–54 (D.Del.

1992); *see also Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F.Supp. 1196, 1199–1200 (W.D.Pa.1992). Those courts have justified their decisions on three grounds: (1) the failure of a limited remedy and an exclusion of consequential damages are not inextricably linked clauses in a contract; (2) such an approach preserves freely bargained-for rights and concessions and prevents a whole limitation on liability clause from failing because of a partial deficiency; and (3) the buyer, as the party best able to avoid the loss, should bear the burden of product flaws, not the seller. *See, e.g., Middletown Concrete*, 802 F.Supp. at 1152. These courts hold that a damages disclaimer can only be invalidated upon a showing that it was unconscionable. *See, e.g., Otobai*, 1994 WL 249766 at 11, 1994 U.S. Dist. LEXIS 7592, at *34.[7]

I disagree with the logic and the conclusions of these courts. First of all, the conclusion flies in the face of the language of the Pennsylvania Commercial Code, which states, "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." 13 Pa.C.S. § 2719.[8]

---

**5.** The *Chatlos* decision construed § 2–719 of the Uniform Commercial Code as adopted by New Jersey, and predicted that the Supreme Court of New Jersey would hold that the failure of an exclusive remedy provision did not also invalidate a damage disclaimer similar to the one at issue in this case. The court of appeals observed, however, that the failure of a repair remedy could be a factor in determining whether a damages disclaimer was unconscionable. *See id.* at 1086–87.

**6.** *Ragen* relied on Wisconsin Supreme Court cases and language in the comment to § 2–719 of the UCC, in predicting that the Wisconsin Supreme Court would hold that the failure of the exclusive remedy rendered the damages disclaimer inoperative. *Ragen* was decided ten years after *Chatlos*, relied and made no reference to *Chatlos*, despite the fact that both cases interpreted nearly identical statutory language.

**7.** The courts appear to be relying on 13 Pa. C.S. § 2719(c), which states that consequential damages may be excluded unless the exclusion is unconscionable. However, as dis-

cussed below, I believe the language of § 2719(b) suggests that the failure of an exclusive remedy also can render consequential damages unenforceable. Moreover, the licensing agreement at issue in this case waived far more than consequential damages, and thus § 2719(c), even if it did operate in this case, would not apply to the entire damages disclaimer.

**8.** The full text of 13 Pa.C.S.A. § 2719 provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly

That means that when an exclusive remedy fails, a buyer may seek the entire range of remedies available under the UCC. In such circumstances, as noted in the comment to § 2–719(b) of the UCC, the buyer is left without the "fair quantum of remedy for breach of the obligations or duties outlined in the contract," the remedy has failed in its purpose, and the buyer may avail herself of all remedies available under the UCC, including consequential damages, if proven. *See* 13 Pa.C.S. § 2719(b) cmt. 1.[9]

Defendant argues that despite this language, plaintiff is still bound by the damages disclaimer in the contract. However, this contention ignores a fact the drafters of the UCC certainly contemplated: that exclusive remedy clauses often (if not only) arise in situations where there is also a disclaimer of damages, because without a disclaimer of damages, a remedy is not exclusive. Thus, in stating that a buyer may avail herself of all the remedies available under the UCC when an exclusive remedy fails in its essential purpose, the drafters of the UCC implicitly instructed

that the damages disclaimer has no force when an exclusive remedy fails.

Moreover, I am persuaded that in agreements like the instant one, "parties intended the validity of the consequential damage exclusion to depend on the effectiveness of the limited remedy; if the limited remedy fails, so does the consequential damage exclusion." *See Middletown Concrete,* 802 F.Supp. at 1151 (quoting Kathryn I. Murtagh, "UCC Section 2–719: Limited Remedies and Consequential Damage Exclusions," 74 *Cornell L.Rev.* 359, 369 (1989)). In exchange for parting with an arsenal of legal remedies, the buyer receives from the seller one silver bullet; the seller's assurance that in the event the product does not work, she will do whatever is necessary to repair or replace the product until it works.[10] But what happens when that silver bullet turns to dust, when the seller refuses to abide by its promise to repair or replace? The courts adhering to the *Chatlos* line of reasoning would leave the buyer defenseless, essentially holding that a limitation on lia-

---

agreed to be exclusive, in which case it is the sole remedy.
(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

9. The full text of the comment 1 to § 2719 reads:

Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.

However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article, they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties

outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion, and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2) where an apparently fair and reasonable clause, because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

10. For this reason, I disagree with the other courts that suggest that the exclusive remedy clause and the disclaimer of damages clause clearly are independent clauses. They are not independent, but are rather two inextricably linked, interdependent clauses; the disclaimer of damages clause cannot rationally exist without some remedy, and when the sole remedy fails, so must the damages disclaimer. The interpretation of the other courts would endow the seller with virtual omnipotence in every contract in which this standard limitation on liability clause appears, while rendering the buyer essentially powerless to ensure the seller's performance.

bility clause constitutes unilateral disarmament on the part of the buyer. I believe that outcome to be unreasonable. Such a reading leaves the buyer completely at the mercy of the seller, because the buyer's only remedy is the seller's assurances that it will repair or replace.

■ Accordingly, I predict that the Supreme Court of Pennsylvania, if faced with a limitation of liability clause like the one in this case, would conclude that if a seller, intentionally or negligently, stymies a buyer's efforts to take advantage of the exclusive remedy she bargained for and thereby causes the exclusive remedy to fail in its essential purpose, the damages disclaimer is rendered inoperative and the buyer may invoke all remedies available under the UCC. Therefore, because I conclude that plaintiff Caudill has adequately stated a claim that defendant's conduct resulted in the failure of the essential purpose of the software licensing agreement, Caudill may, at this stage, seek the full range of damages available under the UCC, including consequential and incidental damages.

### Fraud Claim

■ Prophet 21 contends that plaintiff's fraud claim is, essentially, a breach of contract claim in disguise, and, thus, should be dismissed. Prophet 21 here invokes the "gist of the action" test.[11] "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct

that is primarily tortious." *See Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 651 (W.D.Pa.1999) (citing cases). First applied by the Superior Court of Pennsylvania in *Bash v. Bell Tel. Co.*, 411 Pa.Super. 347, 601 A.2d 825 (1992), the gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based. *See Phico Ins. Co. v. Presbyterian Medical Serv. Corp.*, 444 Pa.Super. 221, 229, 663 A.2d 753 (1995).

■ Looking, then, to the fraud claim in the amended complaint here, it is clear that it is essentially a restatement of the breach of contract claim. The bottom line in this case is that Caudill signed an agreement with Prophet 21 to buy software that worked, and the software (allegedly) did not work. The duties that plaintiff alleges defendant breached were created by and grounded in the licensing agreement. The fraud claim turns on the sufficiency of defendant's performance under the terms of the licensing agreement, and whether, in the context of that agreement, Prophet 21 strung Caudill along with further promises based on the agreement. The fraud claim merely alleges that Prophet 21 kept promising Caudill that the software would

11. While the Supreme Court of Pennsylvania has not adopted the gist of the action test, I predict, on the basis of the holdings of the Superior Court of Pennsylvania in *Phico Ins. Co. v. Presbyterian Medical Servsices Corp.*, 444 Pa.Super. 221, 227–30, 663 A.2d 753 (1995) and *Redevelopment Auth. Of Cambria Cty. v. International Ins. Co.*, 454 Pa.Super. 374, 391–95, 685 A.2d 581 (1996), that the Supreme Court would adopt the test. I further predict that the Supreme Court would

reject the misfeasance/nonfeasance test applied in *Raab v. Keystone Ins. Co.*, 271 Pa.Super. 185, 412 A.2d 638 (1979), for the reasons set forth persuasively in *Phico. See Phico*, 444 Pa.Super. at 228, 228 n. 7, 663 A.2d 753 ("We believe the simple rule expressed in *Raab* is inadequate to determine the true character of a claim ... [W]e do not believe that [the] misfeasance/nonfeasance rule possesses any vitality.")

work and that Prophet 21 would fulfill its end of the bargain under the agreement. Thus, "[t]he only difference between the tort and the contract claims is temporal, not substantive." *Haymond v. Lundy*, 2000 WL 804432 at 8, Nos. 99–5015, 99–5048, 2000 U.S. Dist LEXIS 8585, at *25 (E.D.Pa. June 22, 2000).[12] The agreement is far from collateral to the fraud claim; rather, I conclude that the agreement is at the heart of plaintiff's ongoing fraud claim, and therefore the gist of plaintiff's fraud action is unmistakably contractual, not tortious. While I acknowledge that caution should be exercised in determining the gist of an action at the motion to dismiss stage, *see Grode v. Mutual Fire Ins. Co.*, 154 Pa.Cmwlth. 366, 373, 623 A.2d 933 (1993), I conclude, based on the foregoing, that plaintiff's fraud claim merely duplicates its breach of contract claim and must be dismissed.[13]

### Conclusion

Defendant has moved to dismiss plaintiff's entire amended complaint on the grounds that (1) the limitation on liability clause in the licensing agreement between the parties prevents plaintiff from recovering any of the damages it seeks, and (2) the warranty and fraud counts fail on the ground that plaintiff did not state claims upon which relief could be granted. I am persuaded only by the latter argument as to the fraud count. It remains to be seen whether plaintiff's evidence will bear out the allegations in the complaint, but for

now, the case may move forward on all but Count II.

An appropriate Order follows.

---

**12.** The case relied upon by plaintiff, *Polymer Dynamics, inc. v. Bayer Corp.*, 2000 WL 1146622, No. 99–2040, 2000 U.S. Dist. LEXIS 11493 (E.D.Pa. Aug. 14, 2000), is not binding on this Court and is distinguishable. While *Polymer* is similar to this case in that it involved a seller allegedly making numerous false promises after the agreement was signed that the product would perform as promised, the *Polymer* court noted plaintiff specifically alleged that as a result of those ongoing misrepresentations, it had incurred expenses that it would not have "had defendant not misrepresented the nature of and it[s] ability to

remediate the problems with the equipment." *See id.* at 7, *21. Caudill's fraud claim in this action contains no such specific allegation that plaintiff incurred additional damages as a result of ongoing misrepresentations, and thus, *Polymer* does not divert me from my conclusion that the gist of plaintiff's fraud claim is contractual.

**13.** Plaintiff's claim for punitive damages, which appears only in the fraud claim, is dismissed along with plaintiff's fraud claim.